UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODOLFO OLLER CASTRO, | Case No.  1:26-cv-03779 (EJD) |
| Petitioner, | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER, *et al*., | Re: Dkt. Nos. 1, 2, 9 |
| Respondents. | |

This habeas action concerns the detention of Petitioner Rodolfo Oller Castro, a noncitizen who has lived in the United States since June 21, 2021. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2) as mandating detention for all noncitizens present in the United States without admission, Petitioner was detained without any finding of changed circumstances demonstrating that he was a flight risk or danger to the community. This matter is before the Court on Petitioner's writ of habeas corpus, motion for temporary restraining order, and Respondents' motion to dismiss. *See* Dkt. 1, 2, 9. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus, DENIES Respondents' motion to dismiss, and resolves the motion for temporary restraining order as moot.

## I.    BACKGROUND

Petitioner, a native of Cuba, entered the United States on June 21, 2021, and was detained by U.S. Customs and Border Patrol shortly thereafter. Dkt. 1 at 12. Petitioner alleges that he subsequently "paid a bond, and was released to pursue his immigration case." *Id*. at 5. Respondents do not dispute this fact in their opposition.

Following his release, Petitioner was reunited with his family, including a U.S. citizen

Case No.: 1:26-cv-03779-EJD

1

aunt, his brother who is a legal permanent resident, and his elderly parents. *Id*. at 6. He was also authorized to work by USCIS, began working as a food delivery driver, and filed an application for asylum. *Id*. at 7. Petitioner contends that he has no criminal history. *Id*. at 2.

Petitioner was re-detained by U.S. Immigration and Customs Enforcement ("ICE") on October 24, 2025 while attending a scheduled credible fear interview for his pending asylum application. *Id*. at 2–3. Petitioner has been detained since this date. According to the Executive Office for Immigration Review's website, Petitioner's next immigration court hearing is scheduled for June 10, 2026. *See* https://acis.eoir.justice.gov/en/caseInformation.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

Petitioner filed this habeas petition and a motion for temporary restraining order on May 18, 2026, arguing that his prolonged detention without a finding that he is a flight risk or danger to the community violates due process and the Immigration and Nationality Act ("INA"). *See* Dkt. 1 at 9–10. Respondents moved to dismiss the petition arguing that Petitioner is "an 'applicant for admission' who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2)." Dkt. 8 at 1. In moving to dismiss, Respondents requested that the Court resolve the habeas petition on the

Case No.: 1:26-cv-03779-EJD

United States District Court
Eastern District of California

current briefing. *Id*. at 2. For the reasons that follow, the Court finds that Petitioner's continued detention is unlawful.

### A.     Detention Authority

The Court finds that § 1225(b) does not control Petitioner's detention. Under § 1225(b)(1)(A)(i) an "arriving alien" may be ordered removed "without further hearing or review" pursuant to an expedited removal process. 8 U.S.C. § 1225(b)(1)(A)(i). Noncitizens are subject to mandatory detention during those proceedings. *See* 8 U.S.C. § 1225(b)(1)(B)(ii). In contrast, 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Unlike § 1225(b)(1)(B)(ii), noncitizens who fall under § 1226(a) are not subject to mandatory detention. *See* 8 U.S.C. § 1226(a) (1)-(2), (c). Instead, the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Rodriguez Diaz*, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing." *Labrador-Prato v. Noem*, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018)).

Under this framework, the Court concludes that § 1225(b) does not apply to Petitioner. "[W]here a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,'" the former applies. *See Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)). Here, after petitioner was initially detained by ICE, he was released on bond to proceed with his immigration case, and allegedly placed in regular, rather than expedited, removal proceedings. Dkt. 9 at 2–3. An Immigration Judge later found that Petitioner had "established a significant possibility of eligibility for asylum under section 208 of the Immigration and Nationality Act…". Dkt. 1 at 22. Petitioner remained out of immigration custody

Case No.: 1:26-cv-03779-EJD

on release for over four years before he was re-detained. As Section "'1225(b)(1) only mandates detention of noncitizens arriving in the United States during the pendency of expedited removal proceedings,' which ceased[]" when Petitioner was released from custody, § 1225(b) does not authorize Petitioner's continued detention. *Gomez v. Bondi*, 2026 WL 788805, at \*2 (D. Nev. Mar. 20, 2026) (quoting *Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 69 n.7 (D.N.H. 2025)).

Given Respondents' failure to articulate a lawful basis for Petitioner's detention, the Court next turns to his due process claim.

### B.    Due Process

Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at \*2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1.    Liberty Interest

A protected liberty interest may arise from a conditional release from physical restraint. *See Young v. Harper*, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (finding due process requires pre-deprivation hearing before revocation of preparole). As such, Courts have found that noncitizens released on bond obtain a protected liberty interest in their continued freedom. *See, e.g., Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F.Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *He v. Lyons*, No. 25-cv-10639-JSC, 2026 WL 280074, at

Case No.: 1:26-cv-03779-EJD

United States District Court
Eastern District of California

*3 (N.D. Cal. Feb. 3, 2026) ("Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.").

Here, Petitioner's initial detention and subsequent release on bond in 2021 allowed him to live in the United States, subject to immigration supervision, but free from custody for over four years. Such time allowed Petitioner to form "enduring attachments of normal life," such as reuniting with his family, working, and going to church. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). As such, the Court finds that Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

### 2. *Mathews* Factors

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context where a noncitizen possesses a protected liberty interest in his continued release. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for over four years. In the intervening years he has developed ties in his community working and supporting his family. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16,

Case No.: 1:26-cv-03779-EJD

<div style="margin-left:2em; font-style:normal;">
United States District Court<br>
Eastern District of California
</div>

2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Sharan v. Chestnut*, 2025 WL 3167826, at *8 (E.D. Cal. Nov. 12, 2025) ("Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'") (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The record before the Court indicates that there was no independent finding of changed circumstances by a neutral arbiter before Petitioner was re-detained. In fact, Petitioner maintains that he has a clean criminal record—a fact Respondents do not dispute. Dkt. 1 at 2. Further, he was arrested by ICE while attending a scheduled immigration appointment, demonstrating a willingness to comply with immigration rules, rather than an indication of flight risk. Dkt. 1 at 5. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so," but it must provide Petitioner with a hearing first. *Ortega*, 415 F. Supp. 3d at 970.

In light of the fact that Respondents failed to make any showing of changed circumstances before re-detaining Petitioner, he is entitled to release.

## IV.    CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED.  IT IS HEREBY ORDERED that:

Case No.: 1:26-cv-03779-EJD

United States District Court
Eastern District of California

1. Respondents immediately release Petitioner Rodolfo Oller Castro from their custody.

2. Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: June 8, 2026

EDWARD J. DAVILA
United States District Judge

United States District Court
Eastern District of California

Case No.: 1:26-cv-03779-EJD

7